# STATE OF MICHIGAN

# COURT OF APPEALS

MAYA EIBSCHITZ-TSIMHONI,

  Plaintiff-Appellant,

v

OMER G. TSIMHONI,

  Defendant-Appellee.

UNPUBLISHED
June 14, 2018

No.  336868
Oakland Circuit Court
LC No.  2009-766749-DM

Before:  SWARTZLE, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant's motion for attorney fees, costs and sanctions.  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff filed a complaint for divorce in 2009, and the resulting extensive legal proceedings have continued relatively unabated for the past nine years.  It is unnecessary to the resolution of this case for this Court to recite the litigation history in full; suffice it to say that the parties have had, and continue to have, an extremely acrimonious dispute over matters of custody and parenting time relating to their three minor children.  This has resulted in multiple appeals and an extraordinary level of public attention.  In 2016, plaintiff filed an appeal with this Court from the trial court's orders of August 12, 2015 and September 3, 2015, which orders precluded plaintiff from having contact with the children and changed custody of the children from plaintiff to defendant without an evidentiary hearing.  Concluding that the trial court's actions were "procedurally flawed," this Court held "that the trial court improperly issued the August 12, 2015 order effectively changing custody from [plaintiff] to [defendant] without a hearing," while declining to address plaintiff's contentions of judicial bias and denying her request for the immediate return of the children to her custody.[1]  Shortly after this Court remanded the case to the trial court, the parties entered into a stipulated custody and parenting time order.  Yet, despite having reached an agreement on the central issue in this case, the parties continue to litigate

---

[1] *Eibschitz-Tsimhoni v Tsimhoni*, unpublished per curiam opinion of the Court of Appeals, issued April 14, 2016 (Docket No. 329406), pp 1-3.

other peripheral matters, such as entitlement to attorney fees and costs, which is the subject of this appeal.

Plaintiff challenges the trial court's award of attorney fees and costs totaling $26,579.50, payable to defendant and the Oakland Circuit Court Clerk, under MCR 3.206(C)(2)(b), as a result of plaintiff's violation of specified orders of the trial court and unreasonable conduct. Defendant sought an award of costs and attorney fees in excess of $152,000 on multiple grounds, including his asserted financial need under MCR 3.206(C)(2)(a), plaintiff's violation of the trial court's orders under MCR 3.206(C)(2)(b), and as sanctions related to various pleadings and filings under MCR 2.114(E). During an evidentiary hearing in this matter, counsel for plaintiff stipulated to the reasonableness of the hourly rates charged by defense counsel and that the work alleged was performed;[2] the only dispute pertained to the reasonableness or necessity of defense counsel having performed the work for which they sought fees and costs. The trial court denied any fees and costs to defendant premised on financial need. The trial court further determined that certain of defendant's requests for attorney fees under MCR 3.206(C)(2)(b) were not warranted or proven. The trial court ultimately awarded $21,087 to defendant based on the fees charged by trial attorney Keri Middleditch, $4,492.50 based on the fees charged by Susan Lichterman, and $1,000 in sanctions to the Oakland County Clerk's Office to be paid by plaintiff or her attorneys. The trial court denied reconsideration of its order. This appeal followed.

## II. STANDARD OF REVIEW

> We review for an abuse of discretion a trial court's award of attorney fees in a divorce action. An abuse of discretion occurs when the result falls outside the range of principled outcomes. However, findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error. "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." [*Richards v Richards*, 310 Mich App 683, 699-700; 874 NW2d 704 (2015) (citations omitted).]

A trial court has "the inherent authority to sanction litigant misconduct." *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995). We review for an abuse of discretion the trial court's imposition of such sanctions. See *Maldonado v Ford Motor Co*, 476 Mich 372, 375-376; 719 NW2d 809 (2006). We review for an abuse of discretion a trial court's orders directing discovery. *Ligouri v Wyandotte Hosp & Med Ctr*, 263 Mich App 372, 375; 655 NW2d 592 (2002). We review de novo constitutional issues as questions of law. *Yaldo v North Pointe Ins Co*, 217 Mich App 617, 623; 552 NW2d 657 (1996).

## III. AWARD OF ATTORNEY FEES UNDER MCR 3.206(C)(2)

Plaintiff argues that the trial court erred by determining that defendant was entitled to an award of attorney fees under MCR 3.206(C)(2)(b). We disagree.

---

[2] Based on these stipulations, this Court will not, in this appeal, delve into the reasonableness of the rates or the amount of time charged for the specific work performed.

MCR 3.206(C) provides:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that

> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

Attorney fees under MCR 3.206(C)(2)(b) "may be authorized when the requesting party has been forced to incur expenses as a result of the other's party's unreasonable conduct in the course of litigation." *Hanaway v Hanaway*, 208 Mich App 278, 298; 527 NW2d 792 (1995). "MCR 3.206(C)(2)(b) is focused on a party's bad behavior." *Cassidy v Cassidy*, 318 Mich App 463, 480-481; 899 NW2d 65 (2017). "The party requesting the attorney fees has the burden of showing facts sufficient to justify the award." *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007). The trial court ordered attorney fees based on several violations of its orders, each of which we discuss below.

## A. VIOLATION OF JUDGMENT OF DIVORCE

The trial court awarded defendant attorney fees and costs incurred for having to respond to plaintiff's filing of a complaint for divorce in the Washtenaw Circuit Court on February 11, 2016. A judgment of divorce had already been entered by the Oakland Circuit Court on August 8, 2011. That divorce judgment included provisions recognizing that the Oakland Circuit Court had jurisdiction over the matter. Despite those provisions, a successor trial judge assigned to this matter in 2015 sua sponte directed the parties to address whether plaintiff had met the jurisdictional requirements for filing for divorce in Oakland County at the time the complaint was filed. On February 11, 2016, defendant filed a brief stating that both subject-matter jurisdiction over this matter and personal jurisdiction over defendant existed in the Oakland Circuit Court. On the same date, plaintiff filed a two-page document that stated in relevant part: "Plaintiff takes no position as to the question raised by the Court. Plaintiff respectfully leaves the question of the existence or absence of jurisdiction to the Court's determination." Plaintiff did not submit a required affidavit. Plaintiff also filed a new divorce complaint in Washtenaw County the same day.

In response to plaintiff's filing of a divorce complaint in the Washtenaw Circuit Court, defendant filed a verified ex parte motion seeking immediate dismissal of the complaint or, in the alternative, for a change of venue and for entry of an "ex parte order pending hearing and for costs and sanctions." On February 22, 2016, the Washtenaw Circuit Court dismissed plaintiff's complaint with prejudice, stating:

-3-

[T]he Court finds that as of the filing of the Complaint for Divorce and as of the entry of this Order, the parties are divorced pursuant to a Judgment of Divorce that entered in Oakland County Circuit Court, Case No. 09-766749-DM (the "Oakland County Divorce Action"); that the Oakland County Divorce Action is still pending and active; that there is no basis for filing a complaint for Divorce preemptively in the event that the Oakland County Divorce Action is hereafter dismissed for lack of subject-matter jurisdiction; that the Oakland County Divorce Action must first be dismissed before a subsequent divorce action can be commenced[.]

Defendant argued that plaintiff's improper response to the Oakland Circuit Court order shifted the burden solely to defendant to respond to the trial court's sua sponte order regarding jurisdiction, necessitating additional work. Defendant further argued that plaintiff's filing of an action in the Washtenaw Circuit Court, despite not having served defendant with the Washtenaw County complaint, required defendant to take action in that venue, and caused defendant to incur attorney fees and costs. The trial court, while declining to award attorney fees to defendant for responding to its sua sponte order, found that plaintiff's conduct made it necessary for defense counsel, upon learning of the Washtenaw County complaint, to respond and notify the Washtenaw Circuit Court of the Oakland County action and its status. Consequently, the trial court awarded $4,492.50 to defendant for having to respond to the complaint filed by plaintiff in Washtenaw County, under MCR 3.206(C)(2)(b), as a violation of the judgment of divorce.

We agree with the trial court that plaintiff's conduct in filing for divorce in another county while the Oakland County divorce judgment was still in effect violated that judgment of divorce. At a minimum, plaintiff and her counsel were cognizant of the fact that the Oakland Circuit Court had already granted the parties a judgment of divorce and that issues continued to be litigated in that forum. Despite the trial court's belated questioning of its jurisdiction, plaintiff's preemptive filing in Washtenaw County "jumped the gun" and violated a judgment that had not been (and indeed, never was) vacated, voided, or invalidated. The trial court did not abuse its discretion by holding that plaintiff's conduct necessitated extra work by defense counsel to inform the Washtenaw Circuit Court of the pendency of the action in the Oakland Circuit Court and to seek dismissal in the Washtenaw Circuit Court. *Richards*, 310 Mich App at 699-700.

Plaintiff further argues that the failure of the Washtenaw Circuit Court to award defendant costs and fees upon the dismissal of the Washtenaw County action precluded the current award of attorney fees and costs under the doctrine of res judicata. We disagree. In *Garrett v Washington*, 314 Mich App 436, 441; 886 NW2d 762 (2016), this Court explained:

The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation. For res judicata to preclude a claim, three elements must be satisfied: (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. [Citations and quotation marks omitted.]

-4-

As the trial court recognized, defendant was not seeking sanctions for a frivolous or improper filing by plaintiff in Washtenaw County, but rather was seeking attorney fees and costs under MCR 3.206(C)(2)(b) for plaintiff's violation of the Oakland County judgment of divorce. The Washtenaw Circuit Court's failure to award sanctions for an improper filing in its court does not preclude a finding by the trial court that its own divorce judgment had been violated, as that issue was never decided in the Washtenaw County action. *Washington*, 314 Mich App at 441. Further, even if the Washtenaw Circuit Court had considered the issue of attorney fees for the violation of the Oakland County divorce judgment, it could not have awarded sanctions or fees because it lacked jurisdiction over the matter. "If the trial court lacked jurisdiction over this case, then it lacked authority to enforce *any* action with respect to the case[.]" *Smith v Smith*, 218 Mich App 727, 732; 555 NW2d 271 (1996). Any action by the Washtenaw Circuit Court relating to the Oakland County divorce proceeding thus would have lacked preclusive effect, as the issue of attorney fees for violating the Oakland County divorce judgment could not have been resolved in the Washtenaw County action. *Washington*, 314 Mich App at 441.

## B. VIOLATION OF JULY 10, 2015 ORDER

Next, plaintiff challenges the trial court's award of fees and costs incurred for plaintiff's violation of the July 10, 2015 order of the trial court. That order required plaintiff to provide medical and health insurance information to the children's court-ordered summer camp. While rejecting certain of defendant's assertions pertaining to plaintiff's violation of this order, the trial court did award defendant's counsel $500 of the $637.50 billed, to compensate for time spent to obtain medical records and forms for the children's attendance at summer camp. Paragraph 8 of the July 10, 2015 order provided that plaintiff "must provide all of the children's camp necessities to the summer camp[.]" Defendant argued that plaintiff violated the July 10, 2015 order by requiring repetitive requests to plaintiff to provide the camp with health care insurance information regarding the children and that plaintiff behaved inappropriately when with the children at the pediatrician's office for their camp physicals.[3] Although plaintiff argues that the trial court's award was premised on defendant's allegations pertaining to her behavior at the pediatrician's office, the trial court in fact limited its award to fees incurred for efforts expended by defense counsel "to facilitate the transfer or execution of the camp medical forms from the children's pediatrician." Therefore, based on the trial court's July 10, 2015 order, because attendance at the camp required the provision of health insurance information and recent physicals for the children, plaintiff's refusal to timely comply with requests for that information required the involvement of defense counsel. Plaintiff's failure to immediately secure and convey the required information and complete any forms demonstrated a "refus[al] to comply with a previous court order, despite having the ability to comply." *Richards*, 310 Mich App at 702, citing MCR 3.206(C)(2)(b). Consequently, the trial court's limited award for plaintiff's violation of that portion of the July 10, 2015 order was not an abuse of discretion. *Id*. at 699.

---

[3] A July 21, 2015 order directed that plaintiff "shall be permitted to take the children to their pediatrician . . . for physicals under . . . supervision . . . if the pediatrician is unable to visit the children at camp."

Defendant also argued that plaintiff violated terms of the July 10, 2015 order regarding the publication of information or images of the children by including photographs of the children in her July 21, 2015 pleadings with the trial court, which necessitated defendant's filing of a motion to seal and a motion for a gag order. The July 10, 2015 order provided in pertinent part:

11. Both parents must take the children's images off all social media and the internet;

12. Both parents shall not allow the children's images to be published;

13. The court issues a Protective Order that the media shall not publish the children's images.

On July 23, 2015, the trial court entered separate orders in response to motions filed by defendant. The trial court granted defendant's motion to seal the trial court record, upon agreement by the parties and the children's lawyer guardian ad litem (LGAL), finding that pleadings filed by plaintiff on July 21, 2015 "contain highly sensitive private, personal medical information that should be protected and would not be in the best interests of the minor children" to be publicly available. The trial court issued a separate gag order precluding anyone involved in or with information regarding this case from having contact with "agents and employees of the media" and "commenting upon the subject matter of this case, the evidence expected to be introduced, the merits of the case, or personal matters regarding the parties or the minor children; and, allowing the minor children to be photographed, filmed or videotaped by the media or allowing the media access to photographs, films, or videotapes of the minor children."

Plaintiff does not dispute that her counsel embedded photographs of the children in the court pleadings. The trial court found that plaintiff's use of the children's photographs in her July 21, 2015 filing, as well as the attachment of documents that contained confidential information pertaining to the children, was a violation of the July 10, 2015 order. As a consequence of plaintiff's actions, the trial court determined that defendant had incurred costs and attorney fees in securing the entry of the gag order and order to seal the trial court record. Plaintiff argues that the work performed by defense counsel was unnecessary and should not be compensated because plaintiff's counsel ultimately stipulated to the gag order and the sealing of the record. We disagree. MCR 8.119(I) provides, in relevant part:

(1) Except as otherwise provided by statute or court rule, a court may not enter an order that seals courts records, in whole or in part, in any action or proceeding, unless

(a) *a party has filed a written motion* that identifies the specific interest to be protected,

(b) the court has made a finding of good cause, in writing or on the record, which specifies the grounds for the order, and

(c) there is no less restrictive means to adequately and effectively protect the specific interest asserted. [Emphasis added.]

Therefore, regardless of the cooperation of plaintiff's counsel, defendant was required by MCR 8.119(I)(1)(a) to file a written motion with the trial court to seal the record. This action was necessitated by plaintiff's violation of the July 10, 2015 order, and the trial court did not abuse its discretion by awarding fees related to this violation. *Richards*, 310 Mich App at 699.

## C. OTHER UNREASONABLE CONDUCT

Plaintiff also argues that the trial court abused its discretion when it awarded defendant attorney fees and costs incurred as a result of plaintiff's hiring of a public relations firm after the children were placed in Children's Village. We disagree.

In ascertaining whether an award of attorney fees is appropriate due to a party's unreasonable conduct, a trial court is required to consider whether: (a) unreasonable conduct occurred, (b) the attorney fees incurred were caused by the unreasonable conduct, and (c) the fees incurred are reasonable. *Reed v Reed*, 265 Mich App 131, 165-166; 693 NW2d 825 (2005). Here, the trial court found that plaintiff's hiring of a public relations firm "transformed a highly personal family issue into an international news story." The trial court deemed plaintiff's conduct to be both "wrongful" and "unreasonable," and resulted in defendant incurring substantial fees and costs for the time and effort expended by defense counsel in responding to contacts by the media and necessitating the filing of protective orders and orders to seal the trial court file. The trial court awarded defense counsel $12,124.50 in costs and fees incurred in July 2015 and August 2015, as a "direct result of [p]laintiff's unreasonable decision to involve the media in this case[.]"

While much of the chaos and escalation of the litigation in this matter may be attributable to the trial court's placement of the children in Children's Village through an ex parte order, plaintiff exacerbated the situation by exposing the children and parties to intense media scrutiny, rather than focusing on and pursuing legal alternatives and channels to correct the trial court's actions. Plaintiff's behavior did nothing to aid the situation, but rather consumed time and resources that would have better been dedicated to correcting the trial court's actions and protecting the children.

Defense counsel submitted a bill of costs and testified regarding the work incurred as a result of plaintiff's promotion of media involvement in the case, describing her office as having been inundated with telephone calls and communications from numerous media outlets, locally, nationally and internationally, culminating in over 100 telephone calls to her office in a one-day period. Based on the trial court's determination that plaintiff's involvement of a public relations firm to publicize the proceedings and events (despite the potential emotional cost and exposure of the children to such scrutiny) was unreasonable, as well as defense counsel's proofs regarding the costs incurred due to plaintiff's conduct, the trial court's award of $12,124.50 in attorney fees and costs to defendant was not an abuse of discretion. *Richards*, 310 Mich App at 699.

The trial court also awarded $275 to defense counsel for work performed to address plaintiff's retention of a New York attorney to represent the children. At the time plaintiff retained this attorney, an LGAL was already assigned to the children and the trial court had appointed an attorney to represent each child in certain proceedings. The trial court deemed plaintiff's retention of another attorney "unreasonable" given the representation already afforded

to the children. Retaining an additional attorney in this matter served no useful purpose, as evidenced by the lack of work performed by that attorney and the absence of any outcome attributable to her on behalf of the children. Involving one more professional simply added to the ongoing chaos and created additional work without any discernible benefit. Particularly in the overall context of the exorbitant amount of attorney fees expended in this matter by both parties, the *de minimis* amount awarded by the trial court to compensate defendant for this action by plaintiff was not an abuse of discretion. *Id*. And although plaintiff argues that the trial court could not establish that the New York attorney was merely a consultant to plaintiff rather than a representative of the children, we do not find clear error in the trial court's factual findings. *Id*. at 699-700.

IV. SANCTIONS FOR MISCONDUCT

Plaintiff also argues that the trial court abused its discretion by ordering sanctions to be paid to the Oakland County Clerk and defendant's counsel related to the violations of two of its orders. We disagree. Again, the trial court has "the inherent authority to sanction litigant misconduct." *Cummings*, 210 Mich App at 253.

The trial court issued an order on February 22, 2016, which stated in relevant part:

IT IS FURTHER ORDERED that for the reasons stated on the record, no document, motion, response, or brief filed in this matter shall contain derisive comments, insults, disparaging remarks, or otherwise criticize a lawyer, witness, court employee, or the court. Violations may result in the document being stricken and the attorney or party signing such document being sanctioned.

While not opposing defense counsel's motion to withdraw, plaintiff's July 19, 2016 response to the motion made several disparaging comments regarding defense counsel's "groundless motions," "vexatious filings," and "filings spewing untruths." The trial court sanctioned plaintiff and her counsel for this behavior, awarding $500 to be paid to the Oakland County Clerk's Office for violation of the February 22, 2016 order.

The content of plaintiff's answer to defense counsel's motion to withdraw clearly violated the trial court's February 22, 2016 order, and the trial court did not abuse its discretion by ordering sanctions related to its violation. See *Maldonado* 476 Mich at 375-376.

Similarly, the trial court imposed sanctions and awarded fees to defense counsel for plaintiff's failure to appear on time at the September 16, 2016 hearing despite a June 4, 2014 order requiring that plaintiff "shall appear at all future court dates unless the court states otherwise." The trial court sanctioned plaintiff and her counsel $500 payable to the Oakland County Clerk and awarded defense counsel $1,000 for the delay and inconvenience of plaintiff's failure to be present at the beginning of the September 16, 2016 hearing. Although plaintiff asserts that she caused no delay in the proceedings and ultimately arrived at the hearing, time was expended in identifying and explaining plaintiff's absence, securing her presence, and re-ordering the testimony of witnesses to avoid postponement of the proceedings. The trial court's award of attorney fees as a sanction for violating its June 4, 2014 order was therefore justified. *Id*.

-8-

## V. FIRST AMENDMENT CONCERNS

Plaintiff also argues that, notwithstanding whether the awards were justified under the court rules, the trial court's award of attorney fees and costs for her retention of a public relations firm and for statements contained in her pleadings constituted an improper punishment for the exercise of her First Amendment right to free speech. We disagree.

The United States and Michigan constitutions protect an individual's right to free speech. US Const, Am I; Const 1963, art 1, § 5; *Thomas M. Cooley Law School v Doe 1*, 300 Mich App 245, 255-256; 833 NW2d 331 (2013). Yet, an individual's right to speak freely is not absolute, and must sometimes yield to other concerns. See *Thomas M. Cooley Law School*, 300 Mich App at 256; see also *United States v Brown*, 218 F3d 415, 424 (CA 5, 2000) (stating that "the constitutional status of all First Amendment freedoms . . . [is] not absolute but must instead be applied in light of the special characteristics of the [relevant] environment. Indeed, [a]lthough litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise in the context of both civil and criminal trials.")

"The legislative purpose behind the Child Custody Act is to 'promote the best interests and welfare of children.' " *Frame v Nehls*, 452 Mich 171, 176; 550 NW2d 739 (1996) (citation omitted). As recognized in *Fisher v Fisher*, 118 Mich App 227, 232; 324 NW2d 582 (1982):

> It is difficult to conceive of a more compelling or vital state interest than the welfare of minor children as it is affected by the dissolution of their parents' civil marriage union. The care and protection of children has long been a matter of utmost state concern. The state has declared that all disputes concerning custody of children shall have preference over other civil actions and that the controlling consideration in such disputes shall be the best interests of the children. MCL 722.25. That the best interests of children are potentially threatened in a divorce situation cannot be gainsaid. Those best interests include inherent rights to proper and necessary support and custody and general well-being, and are matters to which the court's protective function most vitally applies. See MCL 722.24.

Further, the parties' children have a constitutional privacy interest in precluding the disclosure of personal matters. *Swickard v Wayne Co Medical Examiner*, 438 Mich 536, 554; 475 NW2d 304 (1991). As has been recognized in other jurisdictions:[4]

> "[A] trial court can restrain parties and their attorneys from making extrajudicial comments about a pending civil trial only if the record contains sufficient specific findings by the trial court establishing that the parties' and their attorneys' conduct poses a clear and present danger or a serious and imminent threat to the

---

[4] While not binding on this Court, caselaw from other jurisdictions may be considered as persuasive authority. *Travelers Prop Cas Co of America v Peaker Servs, Inc*, 306 Mich App 178, 188; 855 NW2d 523 (2014).

fairness and integrity of the trial." [*In re JS*, 267 Ill App 3d 145, 150; 640 NE2d 1379 (1994), quoting *Kemner v Monsanto Co*, 112 Ill 2d 223, 244; 492 NE2d 1327 (1986).]

Based on concerns expressed by the parties, the trial court and others involved in this matter regarding the stress and trauma being experienced by the children and evidenced by their behavior, it is clear that making the children the focus of intense media scrutiny would serve to exacerbate their difficulties and further invade their privacy. Consequently, when weighing plaintiff's interest in speaking to the media against the rights of the children, the rights of the children predominate. See *In re JS*, 267 Ill App 3d at 150 ("We fail to see the necessity of discussing the details of this case with the news media. Weighing the factors . . ., we find that [the minor child's] rights to privacy and to be free from further emotional trauma outweigh the mother's right to take her case to the press."). In addition, given the highly contentious nature of the proceedings and the level of distrust and animosity demonstrated between the parties, airing their grievances in public did nothing to resolve the existing disagreements. While plaintiff speculates that her contacts with the media served to bring attention and resolution to the custody issue, in actuality the custody issue was resolved by the filing of an appeal with this Court, which did not require media involvement.[5] The trial court did not unreasonably restrain plaintiff's First Amendment rights. *Yaldo*, 217 Mich App at 623.

## VI. DENIAL OF DISCOVERY

Further, plaintiff contends that she was disadvantaged in the evidentiary hearing on defendant's motion for attorney fees and costs by the trial court's refusal to permit her to conduct discovery, particularly the depositions of defense counsel who served as the primary witnesses with regard to the requested award of attorney fees and costs. We disagree.

The scope of discovery is addressed in MCR 2.302(B)(1) as follows:

*In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party, including the existence, description, nature, custody, condition, and location of books, documents, or other tangible things, or electronically stored information and the identity and location of persons having knowledge of a discoverable matter. It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

---

[5] *Eibschitz-Tsimhoni v Tsimhoni*, unpublished per curiam opinion of the Court of Appeals, issued April 14, 2016 (Docket No. 329406).

As recognized by this Court:

> [O]ur court rules implement "an open, broad discovery policy. . . ." Parties are permitted to obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the lawsuit, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party. [*Cabrera v Ekema*, 265 Mich App 402, 406-407; 695 NW2d 78 (2005) (citation omitted).]

"However, a trial court should also protect the interests of the party opposing discovery so as not to subject that party to excessive, abusive, or irrelevant discovery requests." *Id.* at 407.

Here, plaintiff submitted a voluminous request for the production of documents and depositions to prepare for the evidentiary hearing in this matter. Some of the requests were unrelated to the issue of attorney fees. Contrary to plaintiff's assertions that she was broadly denied discovery, the trial court denied only certain of plaintiff's specific requests, either because the information was available to plaintiff without the necessity of defendant's production or the discovery was deemed not relevant to the attorney fee issue. For instance, plaintiff's requests in certain instances exceeded the time frames of the requested fees and were thus irrelevant to the requested fees. The trial court did direct defendant to provide plaintiff "with any and all documents provided to any expert being called at the attorney fee hearing," and "all documents that he plans to rely on at the attorney fee hearing." The trial court also permitted plaintiff to depose defense counsel "as a mutually convenient time," but required plaintiff to "pay any and all fees incurred by counsel for deposition." The trial court specifically warned the parties that it would not re-litigate matters that had already been decided.

Both parties complained of the amount of attorney fees and costs expended in this matter and asserted that they lacked the ability to continue to pay their respective legal counsel. Plaintiff's far-reaching discovery requests, encompassing years' worth of materials to address only a request for payment of attorney fees and costs within a certain time frame, served no useful purpose other than to incur additional expenses for both parties. What was relevant were the trial court orders claimed to have been violated, to which both parties had access, and defendant's asserted fees and costs incurred, which were identified through the bills of costs submitted. MCR 2.302(C) permits a trial court to "issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including the provision of "specified terms and conditions" for the discovery. Based on the long history of the litigation in this matter, the precarious financial position of both parties as demonstrated by their inability to continue to pay their respective counsel, and the limited subject matter of the evidentiary hearing, the trial court's limitation on discovery was not an abuse of discretion. *Ligouri*, 263 Mich App at 375.

## VII. PLAINTIFF'S REQUEST FOR ATTORNEY FEES AND COSTS

Finally, plaintiff argues that the trial court erred by denying her July 26, 2016 motion for attorney fees, sanctions and costs. This issue is not properly before us. The trial court did not

-11-

rule on plaintiff's motion for attorney fees, costs and sanctions. In general, "[a]ppellate review is limited to issues actually decided by the trial court," and we therefore decline to address this issue. *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994).

Affirmed.

/s/ Brock A. Swartzle
/s/ Douglas B. Shapiro
/s/ Mark T. Boonstra